UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH H.,

    Plaintiff,

    -v-       6:21-CV-324

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

THE DEHAAN LAW FIRM P.C.  JOHN W. DEHAAN, ESQ.
Attorneys for Plaintiff
300 Rabro Drive, Suite 101
Hauppauge, NY 11788

SOCIAL SECURITY    JAMES J. NAGELBERG, ESQ.
 ADMINISTRATION   Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

- 2 -

## MEMORANDUM–DECISION & ORDER

## I. INTRODUCTION

On March 23, 2021, plaintiff Kenneth H.[1] ("plaintiff" or "claimant") filed

this action seeking review of the final decision of defendant Commissioner of

Social Security ("Commissioner" or "defendant") denying his application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under the Social Security Act (the "Act"). The Commissioner has filed

a certified copy of the Administrative Record and both parties have briefed

the matter in accordance with General Order 18, which provides that an

appeal taken from a final decision denying benefits will be treated as if the

parties have filed cross-motions for a judgment on the pleadings. *See* FED. R.

CIV. P. 12(c). Plaintiff's appeal will be considered on the basis of these

submissions without oral argument.

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's
Committee on Court Administration and Case Management and adopted as local practice in this
District, only claimant's first name and last initial will be mentioned in this opinion.

## II.  <u>BACKGROUND</u>

On April 20, 2018,[2] plaintiff applied for DIB and SSI alleging that his "PTSD," "adjustment disorder," "severe alcohol use," "chemical depend[e]ncy," "anxiety," and "depression" rendered him disabled beginning on March 30, 2018.  R. at 223–36.[3]  This claim was initially denied on October 2, 2018.  *Id*. at 103–110.

On February 3, 2020, at plaintiff's request, a hearing was held before Administrative Law Judge Kenneth ("ALJ") Theurer.  R. at 44–72.  The ALJ conducted the hearing from Syracuse, New York.  *Id*.  Plaintiff, represented by non-attorney Kimberly McDougall, appeared and testified from Watertown, New York.  *Id*.  The ALJ also heard testimony from Vocational Expert Bridgett Collins.  *Id*.

On February 13, 2020, ALJ Theurer issued a written decision denying plaintiff's application for benefits.  R. at 11–23.  This decision became the final decision of the Commissioner on February 5, 2021, when the Appeals Council denied plaintiff's request for review.  *Id*. at 1–3.

---

[2] The parties and the ALJ all state that plaintiff *applied* for SSI and DIB on April 20, 2018.  The initial denial letters reflect this date, too.  R. at 103–04.  Notably, however, the "application summary" for plaintiff's DIB and SSI applications actually lists June 6, 2018 as the date on which plaintiff applied.  *Id*. at 183–95.  This document does reference the April 20, 2018 date, though: it is listed as the "claim effective filing date."  *Id*. at 182.  Thus, while it might be more accurate to say that plaintiff "applied on June 6, 2018 with an effective filing date of April 20, 2018," the Court will follow the parties' lead in merely referencing the earlier, "effective filing" date.

[3] Citations to "R." refer to the Administrative Record.  Dkt. No. 8.

## III.  LEGAL STANDARD

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520.[4]  At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  § 404.1520(a)(4)(i).  If so, the claimant is not disabled regardless of his medical condition or other factors.  § 404.1520(b).

---

[4]  Section 404.1520 sets forth the five-step evaluation used for DIB claims.  A parallel set of regulations govern SSI applications.  *See* 20 C.F.R. § 416.920(a)(4).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities.  § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings").  § 404.1520(d).  If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors.  § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work."  § 404.1520(e)–(f).  If so, the claimant is not disabled.  § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy.  § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency"). 42 U.S.C. § 405(g). However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Thus, "where there is a reasonable basis for

doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). This is so regardless of whether or not the decision is otherwise supported by "substantial evidence." *See id.*

## IV. DISCUSSION

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since March 30, 2018, the alleged onset date; (2) plaintiff's neuropathy, tinnitus, post-traumatic stress disorder, anxiety, and depression were "severe" impairments within the meaning of the Regulations; and (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 13–14.

At step four, the ALJ determined that plaintiff retained the RFC perform "light work" with exertional (*i.e.*, physical) and non-exertional (*i.e.*, mental) limitations. R. at 16. Specifically, the ALJ found that plaintiff:

> can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, stand or walk for approximately six hours in [an] eight-hour day with normal breaks. He can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds; can perform occasional balancing, stooping, kneeling, crouching, and crawling. He should avoid work at unprotected heights or in conjunction with dangerous machinery, and he should not work in a noise environment greater than moderate as defined in the DOT. He retains the ability to hear and understand simple, oral instructions and to communicate simple information,

>and work is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes.

R. at 16.

Next, the ALJ determined that plaintiff had past relevant work as an electrician, but that he was unable to perform any of this past work with his current RFC.  R. at 21–22.  However, after considering plaintiff's age, education, and the RFC finding in light of the testimony from the Vocational Expert, the ALJ concluded that plaintiff could still perform a range of unskilled light work in such representative jobs as a "mail clerk," a "garment sorter," or a "marker."  *Id.* at 22.

Because these representative jobs existed in the sufficient numbers in the national economy, the ALJ concluded that plaintiff was not disabled between March 30, 2018, the alleged onset date, through February 13, 2020, the date of his written decision.  R. at 23.  Accordingly, the ALJ denied plaintiff's application for benefits.  *Id.*

## A.  **Plaintiff's Appeal**

Plaintiff contends the ALJ improperly evaluated the medical evidence, which caused him to (a) incorrectly conclude that plaintiff's substance abuse disorder was not a "severe" impairment at step two; and (b) erroneously find that plaintiff did not meet or equal any of the presumptively disabling

Listings at step three.  Pl.'s Mem., Dkt. No. 15 at 31–48.[5]  Plaintiff also

argues that the ALJ (c) improperly evaluated the credibility of his hearing

testimony.  *Id.* at 49–51.  In plaintiff's view, the combined effect of these

errors led the ALJ to (d) reach an RFC determination that is not supported

by substantial evidence.  *See id.* at 31–51.

### A.  <u>Severity at Step Two</u>

Plaintiff contends the ALJ should have found his severe alcohol use

disorder—even though it is " in remission"—to be a severe impairment at

step two.  Pl.'s Mem. at 31–33.  The Commissioner responds that any error at

this early stage of the sequential evaluation process was harmless because

the ALJ considered the medical evidence related to plaintiff's alcohol use

disorder as part of his later RFC analysis.  Def.'s Mem., Dkt. No. 21 at 4–7.

At step two, the ALJ must determine whether a claimant has one or more

"severe" impairments; *i.e.*, a condition that "significantly limits" his physical

or mental ability to do "basic work activities."  20 C.F.R. §§ 404.1520(c),

416.920(c).  These "basic work activities" include things like walking,

standing, sitting, lifting, carrying, pushing, pulling, reaching, handling,

seeing, hearing, speaking, understanding, remembering and carrying out

simple instructions, using judgment, and responding appropriately to

---

[5]  Pagination corresponds with CM/ECF.

supervisions, co-workers, an usual work situations. *See, e.g.*, *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012).

This early step of the evaluation process sets a low bar that is intended only to screen out disability claims based on *de minimis* impairments. *See, e.g.*, *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. Kahn, J.) (adopting Report & Recommendation of Bianchini, M.J.). Even so, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment," is insufficient to render a condition "severe" within the meaning of the Regulations. *Id.*

Instead, the burden at this step falls on the claimant to identify how the particular symptomatology stemming from the impairment claimed to be "severe" actually works to "significantly limit" his physical or mental ability to complete "basic work activities." *Lake v. Colvin*, 2016 WL 2757750, at \*4 (N.D.N.Y. May 12, 2016). For instance, if the evidence indicates that a condition exists but is well-controlled by medication or treatment and does not cause the claimant any functional issues, that condition is not "severe" within the meaning of the Regulations. *See id*. at \*5 (collecting cases).

Upon review, the Court agrees with plaintiff that his severe alcohol use disorder likely clears the *de minimis* threshold for severity at step two. In reaching this conclusion, it bears emphasizing that plaintiff's central claim of disability presents in an unusual way—between the hearing testimony and

the other evidence in the record, plaintiff's claim is that the combined physical and mental impact of discontinuing his long-term alcohol abuse; *i.e.*, successfully treating the disorder and putting it "in remission," has actually made the symptoms from his underlying conditions worse, not better.

In other words, plaintiff's disability claim revolves around the assertion that he was able to maintain gainful employment as an electrician despite his post-traumatic stress disorder ("PTSD"), anxiety, and depression because he "self-medicated" with copious amounts of alcohol. When his alcohol use finally ceased, the impact of these otherwise-untreated mental conditions became severely limiting, and they remain so despite the fact that he now receives medically appropriate, supportive treatment.

To be sure, other courts have readily brushed this kind of "in-remission" condition aside, especially at step two of the analysis. *See, e.g.*, *Colbert v. Chater*, 893 F. Supp. 280, 284–85 (S.D.N.Y. 1995) (reasoning there was "no reason to conclude" plaintiff could not perform his prior job when, by his own testimony, his alcohol use disorder was "currently in remission").

But even assuming it was error for the ALJ to conclude that plaintiff's severe alcohol use disorder was not severe, it was a harmless one. "Courts have held that error at step two in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe

impairments can later be considered at the RFC stage." *Howard v. Comm'r of Soc. Sec.*, 203 F. supp. 3d 282, 297 (W.D.N.Y. 2016) (collecting cases).

The ALJ continued beyond step two. And as the Commissioner points out, the ALJ discussed plaintiff's alcohol abuse and his response to treatment as part of his RFC determination. Def.'s Mem. at 6. It is also worth noting that the ALJ found plaintiff's PTSD, anxiety, and depression—the underlying conditions allegedly exacerbated by remission—to be severe. R. at 14. As noted *supra*, it is the severity of the symptoms from these underlying mental conditions (as opposed to the alcohol abuse) that increased when plaintiff stopped abusing alcohol. Accordingly, any error at step two was harmless.

## B, C, D.  **The Listings, Credibility, and the RFC**

Even so, out of an abundance of caution this matter must be remanded for a new hearing because the Court is not satisfied that the ALJ's step three and four findings rest on substantial evidence in the record. For instance, plaintiff contends that the ALJ should have found him disabled at step three under Listings 12.04, 12.06, and/or 12.15.[6] Pl.'s Mem. at 47–49. The Commissioner defends the ALJ's conclusion at this step, in part, by relying on evidence that plaintiff is able to live alone, perform a range of daily activities,

---

[6] "The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citations omitted). However, "[i]n order for a condition to be considered disabling *per se* under step three, it must satisfy each element set out in the definition of a listed impairment." *Bolden v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 152, 162 (E.D.N.Y. 2007).

and repeatedly presented to his treating providers with "mostly benign mental status findings."  Def.'s Mem. at 36–38.  The ALJ went on to rely on these and other, similar findings to pretty substantially discount the credibility of plaintiff's testimony, too.  R. at 18–19.

But these findings rely on a somewhat distorted view of plaintiff's hearing testimony and of the other supporting evidence in the record.  As plaintiff points out, since beginning treatment for his alcohol abuse he has received extensive, ongoing psychiatric counseling in a "highly structured setting."  While he does live "alone" in an "apartment," it is part of a larger "assisted living complex" operated by a charity that heavily supports patients who suffer from mental illness.  This living arrangement involves regular wellness checks by building staff as well as frequent professional counseling sessions.  *See* Pl.'s Mem. at 48.

These facts appear to support plaintiff's assertions of serious limitations rather than undermine them.  Further, even putting aside the conflicting medical evidence[7] in the record that would tend to support these assertions of severe (and possibly even disabling) mental limitations, many of the "activities" on which the ALJ relied to discount the credibility of plaintiff's hearing testimony—including his volunteer work at the church and attending

---

[7]  For instance, the ALJ failed to explicitly reconcile the fact that Dr. Kozminski's opinions conflicted, at least in part, because one is an initial assessment of plaintiff's condition while another is based on his knowledge of plaintiff's treatment.

treatment and AA meetings—would seem to fall under the rubric of

"treatment and coping strategies" that, absent other indicia, are

appropriately viewed as supportive of his testimonial allegations.  Pl.'s Mem.

at 50.

Equally problematic is the fact that some of the other "activities" on which

the ALJ relied—including fishing, cooking, and showering—are things that

plaintiff testified he no longer does at all (*e.g.*, he testified that fishing just

triggers a desire to consume alcohol), or that he is unable to consistently

perform outside of a supportive, structured environment (*e.g.*, regular cooking

and basic hygiene).  *Id.* at 51.

Although an ALJ's credibility determination "is generally entitled to

deference on appeal," *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (per

curiam), the ALJ's credibility finding appears to be based, in substantial part,

on either a misapprehension or a mischaracterization of the odd fact pattern

in this record.  And because the step four RFC determination is partially the

product of a claimant's subjective testimony, these errors undermine the

Court's confidence in the RFC determination, too.  *See, e.g.*, *Tammy Lynn B.

v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192–93 (N.D.N.Y.

2019).  Accordingly, remand for a new hearing is warranted.

## IV.  CONCLUSION

Remand is appropriate where, as here, a reviewing court is "unable to

fathom the ALJ's rationale in relation to the evidence in the record" without

"further findings or clearer explanation for the decision." *Williams v.

Callahan,* 30 F. Supp. 2d 588, 594 (E.D.N.Y. 1998) (citation omitted).[8]

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is

DENIED;

2.  Plaintiff's motion for a judgment on the pleadings is GRANTED in part

and DENIED in part;

3.  The Commissioner's decision is VACATED; and

4.  This matter is REMANDED for a new hearing pursuant to sentence

four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated:  July 26, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge

---

[8]  Whether to remand to a different ALJ is a question almost always reserved to the
Commissioner. *See, e.g., Card v. Astrue,* 752 F. supp. 2d 190, 191 (D. Conn. 2001).  While there is no
evidence of any bias here, the Commissioner should carefully consider whether a fresh look by
another ALJ might be beneficial to the process. *See Sutherland v. Barnhart,* 322 F. Supp. 2d 282,
292 (E.D.N.Y. 2004).